THE SEHAT LAW FIRM, PLC
Cameron Sehat, Esq. (SBN 256535)
Jeffrey Mikel, Esq (SBN. 339807)
Alexandra Menninger, Esq. (SBN. 360881)
5100 Campus Drive, Suite 200
Newport Beach, CA 92612
Telephone: (949) 825-5200
Facsimile: (949) 313-5001
Email; cameron@sehatlaw.com

Attorneys for Plaintiffs, Lexie ORSO, L.O.,
a minor, Renee ORSO, Individually and
On Behalf of the Estate of Lawrence D. ORSO;

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEXZIE ORSO, individually and as Successor-in-Interest to the Estate of Lawrence ORSO, deceased; L.O., by and through his guardian ad litem Michelle ORSO individually and as Successor-in-Interest to the Estate of Lawrence ORSO; RENEE ORSO, individually; LAWRENCE D. ORSO, individually; <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF RIVERSIDE, a governmental entity; DOES 1-4, individually; DOES 5-8 individually; and DOES 9-10 inclusive, <br><br> Defendants. | Case No.: <br><br> **COMPLAINT FOR DAMAGES:** <br><br> 1. **Deliberate Indifference to a Substantial Risk of Harm to Health Per 14th Amendment & _Gordon v. County of Orange_ claim** <br> 2. **_State Created Danger_-14th Amendment Violation** <br> 3. **Failure to Train-42 U.S.C. §1983-** <br> 4. **_Monell_- Unconstitutional Custom, Practice and Policy -42 U.S.C. §1983** <br> 5. **Supervisory Liability per 42 U.S.C. 1983** <br> 6. **14Th Amendment-Interference With Familial Relations - 42 U.S.C. § 1983** <br> 7. **Negligence –Wrongful Death (State)** <br> 8. **Bane Act C.C. 52.1 Et Seq. (State)** <br> 9. **Failure to Summon Medical Care (California Government Code § 845.6)** <br><br> **DEMAND FOR JURY TRIAL** |

## PRELIMINARY STATEMENT

1.     Plaintiffs, on behalf of deceased LAWRENCE ORSO, hereinafter referred to as "ORSO" an inmate at the Byrd Cois Detention Center also known as the "Southwest Detention Center" and hereinafter referred to as "SDC", operated by the Riverside County Sheriff's Department, bring this action against the County of Riverside ("COUNTY"), jail deputy staff  DOES 1-4, jail medical staff DOES 5-8 and DOES 9 through 10 for monetary damages to redress for ORSO's injuries and death resulting from Defendants' deliberate indifference to his constitutional rights and liberties. Plaintiffs bring this action under the Fourteenth Amendment of the United States Constitution and the Civil Rights Act of 1871, as codified at 42 U.S.C. § 1983, for injuries and death suffered because of the Defendants' substantial and deliberate indifference to ORSO's health and welfare while in their custody. Plaintiffs further bring their 14th Amendment deliberate indifference claim under the recent 9th Circuit Court of Appeals decision in *Gordon v. County of Orange et* al. *888 F.3d 1118 (April 30, 2018) (Gordon I)* which established a new standard of proof for the deliberate indifference to a pretrial detainee's serious medical condition, and *Gordon v. County of Orange, 6 F.4th 961 (July 26, 2021)* (*Gordon II)* which established a pretrial detainee's constitutional right to adequate medical screening and direct-line of sight safety checks.

2.     Plaintiffs state a claim against the Defendants for a failure to establish policies, procedures and training which resulted in the subject incident. This is a civil action seeking damages against the Defendants for committing acts under color of law, and depriving ORSO of rights secured by the Constitution and laws of the United States (42 U.S.C. § 1983). Defendants COUNTY,  and  DOES 1 through 10, SDC management and employees  were deliberately indifferent by, without limiting other acts and behaviors: failing to medically screen, failing to provide medical care, unsafely releasing a medically unstable ORSO, failing to

follow its established medical care and treatment protocol; failing to protect ORSO from harm; failing to monitor ORSO in a sober cell, failure to monitor for change of condition, failure to provide necessary and appropriate medical treatment and, premature release from sober cell, failing to provide necessary and appropriate personnel necessary for the health and welfare of ORSO, who at the time of death, was a pretrial detainee at the SDC Jail, in the County of Riverside, California. Defendants deprived ORSO rights as guaranteed by the Fourteenth Amendments to the Constitution of the United States against cruel and unusual punishment.

3.     Defendants COUNTY and personnel in charge of operating and managing the SDC Jail, medical officials, management and employees violated the ORSO constitutional rights and were deliberately indifferent by, without limiting other acts and behaviors: (1) deliberately ignoring and failing to heed to ORSO' serious medical condition, to wit, obvious signs of chest pain and complaints including symptoms of medical distress, physical pain and alcohol intoxication (2) failing to conduct 15-minute welfare checks (3) ignoring ORSO's pleas for help (4) failing to medically assess prior to release (5) failing to refer to a medical doctor and failing to transfer to a hospital for diagnostic testing and emergency treatment (6) failing to provide appropriate medication to treat severe symptoms of physical pain and alcohol withdrawal (7) failing to provide necessary and appropriate personnel for the health and welfare of the ORSO (8) failing to train jail staff in severe alcohol and chest pain assessment and (9) failing to implement policies and procedures on chest pain protocol. Because of the defendants' actions, ORSO suffered debilitating physical and emotional injuries before he suffered from devastating heart attack but not before exhibiting severe and unrelenting symptoms of chest pain, and ultimately his death, and which action constituted a clear deprivation of his constitutional rights.

**JURISDICTION AND VENUE**

4.      This action is filed under the Due Process Clause of the Fourteenth Amendment of the United States Constitution and the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983, to redress injuries and the death suffered by the plaintiff's ORSO at the hands of defendants.

5.      By a government claim form dated March 21, 2025, Claimants issued to the County of Riverside, to its Clerk of the Board of Supervisors, a Notice of Claim regarding violations of Plaintiff's ORSO constitutional state law rights. The claim stated the time, place, cause, nature, and extent of the plaintiff's ORSO injuries.

6.      On March 26, 2025, the County of Riverside, through its Clerk of the Board of Supervisors, rejected the claim. The present lawsuit ensued within "6 months" from the date of rejection.

7.      This Court has jurisdiction over the federal civil rights claim pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has supplemental jurisdiction over any state-law claims pursuant to 28 U.S.C. § 1367(a).

8.      At all relevant times, the ORSO was an inmate at the SDC Jail operated by the Riverside County Sheriff's Department.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c).

**PARTIES**

10.      Plaintiff, Lexzie ORSO, is an adult child of Decedent, ORSO. Lexzie ORSO is acting in an individual capacity and on behalf of ORSO estate as a successor.  Plaintiff resides in Riverside County, California.

11.      Plaintiff, L.O., is a minor child of Decedent ORSO. L.O.'s claims are asserted by his guardian ad litem, Michelle ORSO and is acting both in an individual capacity and a successor in interest to the estate of ORSO. Plaintiff resides in Riverside County, California

12.    Plaintiff, Rene ORSO, is the biological mother to ORSO and is acting in her individual capacity.  Plaintiff reside in Riverside County, California.

13.    Plaintiff, Lawrence A. ORSO is the biological father to ORSO and is acting in his individual capacity.  Plaintiff reside in Riverside County, California.

14.    At all times relevant to this complaint, ORSO was a non-convicted inmate, also known as a pretrial detainee, who was at the Southwest Detention Center.

15.    Defendant County of Riverside, hereinafter known as "COUNTY", is a governmental entity that acts through individuals to establish its policies and that is capable of being sued under federal law.

16.    The Riverside County Sheriff's Department is a duly organized subsidiary of COUNTY and is responsible for supervising and operating the SDC Jail, a women's correctional division, and ensuring the health and safety of all inmates and pretrial detainees incarcerated in its corrections facilities.

17.    Defendants DOES 1-3, hereinafter referred to as "DOE Deputies 1-3", were/are employees of the SDC Jail, and at times relevant to the complaint were employed in the capacity of a Riverside County Sheriff's jail deputies and responsible for the welfare and safety of inmates including that of ORSO. Defendants DOES 1-3 are duly authorized employees and agents of the Riverside County Sheriff's Office and were acting within the course and scope of their perspective duties as jail staff in the SDC Jail with the complete authority and ratification of their principal, the County of Riverside.  Defendant DOES 1-3 are being sued in their individual capacities.

18.    Defendant DOE 4, hereinafter referred to as "DOE 4" is an employee COUNTY and stationed at the SDC Jail, and at times relevant to the complaint were employed in the capacity of a Riverside County Sheriff's jail deputy and responsible for the welfare and safety of inmates. Defendant DOE 4 is a duly authorized employee and agent of the Riverside County Sheriff's Office and was

acting within the course and scope of their perspective duties as jail staff in the SDC Jail with the complete authority and ratification of their principal, the County of Riverside.  Defendant DOE 4 is sued in his individual capacity.

19.    Defendants <u>DOES 5-8</u>, hereinafter referred to as "DOES 5-8" or "Medical DOES 5-8", were/are employees of the SDC Jail, and at times relevant to the complaint were employed in the capacity of jail medical staff including nurses and doctors and were responsible for the medical and detox treatment of detoxing inmates.   Defendants DOES 5-8 are duly authorized employees and agent of the "CHS" or Correctional Healthcare Services and were acting within the course and scope of their perspective duties as jail medical staff at the SDC Jail with the complete authority and ratification of their principal, the County of Riverside.  Defendant DOES 5-8 are being sued in their individual capacities.

20.    Defendant <u>DOE 9</u>, hereinafter referred to as "DOE 9", is an employee in the capacity of a jail supervisor at the SDC jail, a subsidiary of Defendant County of Riverside, and at times relevant to the complaint was employed in the capacity of a Deputy supervisor and/or Sargent. The defendant is a duly authorized employee and agent of SDC jail and was acting within the course and scope of her perspective duties as jail staff with the complete authority and ratification of his principal, the County of Riverside. Defendant DOE 9 is being sued in his individual capacity.

21.    DOE 10 is an employee of defendant County of Riverside, and at all times relevant to the complaint was employed in the capacity of decision maker, policy maker and ratification maker at the SDC Jail. They are duly authorized employees and agents of the County of Riverside and were acting within the course and scope of their perspective duties with the complete authority and ratification of their principal, Defendant County of Riverside. DOE  10 is sued in his individual and official capacity.

22.    At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct and employment of each and every defendant herein.

23.    At all times mentioned herein, each Defendants including DOES 1-10 were integral participants in the use of excessive force and failure to provide medical care and to report Decedent's distress, or because they failed to intervene to prevent these violations.

## FACTUAL ALLEGATIONS

24.    46-year-old Lawerence ORSO was an off-duty San Diego Police Officer, who was arrested for Driving Under the Influence ("DUI") at approximately 2:19 a.m. on September 21, 2024.

25.    ORSO, while in the defendants' care and custody had merely been arrested for a DUI and had not been convicted of any crime. Accordingly, he was a pre-trail detainee and thereby ensured the right to medical care that meets constitutional standards, as guaranteed by the Due Process Clause of the Fourteenth Amendment.

26.    On September 21, 2024, Mr. ORSO was taken to the hospital at approximately 3:00 a.m. where he was medically cleared to be transported and observed at the Southwest Detention Center, ("hereafter referred to as "SWDC").

27.    Mr. ORSO was still under the influence of alcohol at the time of booking into SWDC, registering a blood alcohol concentration (BAC) of .23 percent. He was held in the detox/sobering cell for less than 1.5 hours before being released. Mr. ORSO was never medically cleared by jail medical staff (DOES 5–8), nor was he safely released by the releasing deputies (DOES 1–4), in violation of jail policies that prohibit the release of inmates who are in medical distress or otherwise not medically stable.

28.    Mr. ORSO suffered from uncontrolled hypertension and other serious

cardiac conditions, medical issues that were well known to SWDC medical staff (DOES 5–8). At the time of his arrest, Mr. ORSO was wearing a portable EKG monitor prescribed by his cardiologist, who was actively treating him for ongoing and potentially life-threatening heart problems. Despite clear evidence of his serious medical condition, including the visible presence of the monitoring device, SWDC staff failed to take any appropriate steps to assess, monitor, or provide necessary medical care to Mr. ORSO. This deliberate indifference to Mr. DOE's known medical needs constituted a gross violation of his constitutional rights and directly contributed to the harm he suffered while in custody.

29.    Despite his serious and well-documented medical conditions, Mr. ORSO was released from the sobering cell while he remained under the influence of alcohol. The coroner's toxicology report later confirmed that Mr. ORSO's Blood Alcohol Concentration (BAC) at the time was .102 mg/dL, indicating that he was still intoxicated at the time of his release. This premature and medically unsafe release constituted a reckless disregard for Mr. ORSO's health and safety.

30.    At the time of his release from SWDC, Mr. ORSO was experiencing chest pain and visibly in medical distress. Despite his clear and repeated complaints, none of the deputies involved in his release, including DOES 1–4, summoned medical assistance or called 911. Just six (6) minutes after being released, Mr. ORSO exited the facility and sat on a nearby curb. Four (4) minutes later, he collapsed in the SWDC parking lot. His body remained unnoticed and unattended for approximately forty (40) minutes until a passerby discovered him unresponsive. The failure of SWDC personnel to respond to Mr. DOE's obvious medical emergency reflects a shocking disregard for his life and constitutes deliberate indifference to his serious medical needs.

31.    Although SWDC is equipped with surveillance cameras facing the parking Lot, cameras that were purportedly being actively monitored by jail personnel, Mr. ORSO's body remained undiscovered for approximately forty (40)

minutes after he collapsed. This egregious failure to notice and respond to a medical emergency unfolding in plain view reflects a clear breakdown in supervision and further underscores the deliberate indifference of SWDC staff to Mr. ORSO's life-threatening condition.

32.    DOES 1–4 released Mr. ORSO prematurely and in a medically unsafe condition, despite clear indications that he was still intoxicated and exhibiting serious symptoms of a cardiac emergency, including chest pain and visible physical distress. Their failure to seek medical evaluation or intervention prior to his release constituted a reckless disregard for his health and safety, and directly violated established policies prohibiting the release of individuals in medical distress.

33.    County staff, including DOES 1–4 and DOES 5–8, unsafely released Mr. ORSO while he was still intoxicated, exhibiting signs of chest pain and visible distress. He was never medically cleared nor properly monitored to ensure he was safe for release, in direct violation of established medical and safety protocols.

## **FIRST CLAIM FOR RELIEF**

**DELIBERATE INDIFFERENCE TO A SUBSTANTIAL RISK OF HARM TO HEALTH (42 U.S.C. § 1983, 14TH Amendment of the United States Constitution) (Against DOES 1-4, DOE 4, DOES 5-8 AND DOES 9-10)**

34.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1-33 of this complaint with the same force and effect if fully set forth herein.

35.    From the time Mr. ORSO was arrested until the time of his death, the Defendants repeatedly failed to ensure he received proper medical care in repeated violation of his 14th Amendment Constitutional rights.

36.    At all relevant times in this complaint, DOES 1-4 and 5-8 had a non-delegable duty to provide constitutionally adequate medical care to its patient-detainees.

37.    DOES 1-4 and 5-8's constitutional duty also consists of the duty to safely release inmates from jail custody and the duty of continuity of care to its detainees.

38.    All Defendants were made aware, both through Mr. ORSO's own statements and through their direct observations, that he had serious medical needs requiring a higher level of care. Mr. ORSO was exhibiting symptoms consistent with alcohol withdrawal and was showing clear signs of a cardiac emergency. Despite this, Defendants failed to monitor him appropriately or transfer him to a hospital for necessary treatment. The resulting medical crisis was foreseeable and preventable, and Defendants' failure to act constituted deliberate indifference to Mr. ORSO's serious medical condition.

39.    All Defendants made a series of intentional decisions that demonstrated a deliberate disregard for Mr. ORSO's serious medical needs. Upon observing that Mr. ORSO was in possession of a portable EKG device, clearly indicating ongoing cardiac monitoring and treatment, Defendants knew or should have known that Mr. ORSO could not be safely booked into SWDC without immediate medical evaluation and continuous monitoring. Despite this, Defendants failed to summon emergency medical assistance or arrange for hospital transport when Mr. ORSO began complaining of chest pain. Moreover, they failed to conduct any meaningful observation of Mr. ORSO while he was in custody, further endangering his life and violating their legal and constitutional obligations.

40.    The decisions taken by all Defendants placed Mr. ORSO at a substantial and foreseeable risk of serious harm and death. Each Defendant was unequivocally informed, both verbally by Mr. ORSO and through observable

signs, that he was in medical distress and had pre-existing, severe cardiac conditions. Despite clear and obvious indications of his deteriorating condition, Defendants failed to take appropriate steps to ensure his safety, in violation of their constitutional duty to protect individuals in their custody from known medical risks.

41.    Defendants failed to take any reasonable available measures to abate that risk, even though reasonable officials, including reasonable nurses and jailers in these circumstances would have appreciated the high degree of risk involved making the consequence of the Defendants' conduct obvious.

42.    All Defendants knew or knew there was a substantial risk to Mr. ORSO's health if his cardiac health concerns went untreated but failed to provide the appropriate medical treatment.

43.    It was objectively unreasonable for the Defendants to ignore the numerous objective signs and symptoms of a serious medical condition, which said symptoms were chest pain, and uncontrolled blood pressure and heart problems. Any diligent medical professional would have been apprised of the serious impending medical condition, and promptly summoned paramedics and/or an ambulance to stabilize Mr. ORSO's vital signs and escort him safely to the hospital for treatment or monitor his condition.

44.    As a result of the repeated denial of proper medical care, Mr. ORSO spent his last remaining breaths sitting on the curb outside of SWDC suffering unnecessary and excruciating pain culminating to his death.

45.    The denial of medical treatment exacerbated Mr. ORSO's serious cardiac condition to a point where his life was placed in jeopardy.

46.    The Defendants, by ignoring Mr. ORSO in this situation and by failing to provide proper medical attention, acted with deliberate indifference to the serious heart condition and to the medical needs of Mr. ORSO.

47.    Because Mr. ORSO was a mere arrestee, the Defendants, by their acts of deliberate indifference in failing to provide medical care to treat Mr. ORSO's serious medical condition, the conduct thereof constitutes cruel and unusual punishment in violation of the Due Process Clause of the Fourteenth Amendment of the Constitution.

48.    Mr. ORSO's death was easily preventable.

49.    Such acts and omissions of the Defendants violated Mr. ORSO's constitutional rights guaranteed under 42 U.S.C. § 1983, and Fourteenth Amendments to the United States Constitution. The defendants knew that by failing to treat the urgent symptoms of cardiac symptoms, they were exposing him to a substantial and unjustified risk of serious harm, that it would lead to a fatality, but not before Mr. ORSO endured significant pain and agony during the period preceding his death.

50.    Accordingly, Defendants each are liable to Plaintiffs in their capacities as successors-in-interest to Mr. ORSO's estate for compensatory, predeath pain and suffering, and loss of life and opportunity for life, and punitive damages under 42 U.S.C. §1983. Plaintiffs also seek reasonable attorney's fees under § 1988.

## SECOND CLAIM FOR RELIEF
## 14TH AMENDMENT- STATE CREATED DANGER
### (Against DOES 1-10)

51.    Plaintiffs hereby repeat and re-state and incorporate each and every allegation in paragraphs 1 through 50 of this Complaint with the same force and effect as if fully set forth herein.

52.    Under the Fourteenth Amendment, Mr. ORSO had the constitutional right to be free from Defendants' affirmative action of placing him in a position of actual, particularized danger. In this case, Defendants knew of Mr. ORSO's

medical distress. Mr. ORSO's condition was known to jail and medical staff from the time of his arrest to the time he exited the SWDC.

53.     Since his arrest, Mr. ORSO was in the Defendants care and custody, and as such Defendants had an affirmative duty not to expose Mr. ORSO to more danger than he would have been prior to their encounter.

54.     By blatantly failing to appreciate the severity of Mr. ORSO's cardiac symptoms, and by not calling the ambulance or taking his concerns serious, SWDC made an affirmative decision which consequently placed Mr. ORSO in serious distress and put him in grave danger.

55.     By refusing to address Mr. ORSO's concerning chest pain, Defendants also acted with deliberate indifference to a known or obvious danger.

56.     Defendants affirmative acts created a foreseeable risk that Mr. ORSO would be in grave danger without the proper medical treatment.

57.     Accordingly, Defendants each are liable to Plaintiffs for compensatory and punitive damages under 42 U.S.C. § 1983 and the 14th Amendment, as well as for wrongful death damages.

## THIRD CLAIM FOR RELIEF

### MONELL-FAILURE TO TRAIN, SUPERVISE AND DISCIPLINE
### (42 U.S.C. §1983)
### (AGAINST COUNTY and DOE 10)

58.     Plaintiffs hereby repeat and re-state and incorporate each and every allegation in paragraphs 1 through 57 of this Complaint with the same force and effect as if fully set forth herein.

59.     At all relevant times to this complaint, Defendant COUNTY and DOES 1-10 had the duty and responsibility to train, hire, instruct, monitor, and investigate staff and discipline other Defendants as well as all employees and agents of COUNTY.

60.     Defendants COUNTY and SWDC knew that Mr. ORSO was a vulnerable inmate upon his arrest and subsequent medical evaluation and will have suffered from an emergency medical condition and that the SWDC was not equipped to care for acutely ill patients.

61.     The SWDC nursing and deputy staff had not been trained adequately in monitoring, documenting, and assessing patients' acute medical conditions, and/or safely transporting medically unstable patients to the hospital. This failure to train led to a substantial and fatal delay in Mr. ORSO's care, resulting in his death.

62.     Despite COUNTY's general jail policy requiring that medically unstable inmates be seen by a doctor and transferred to a hospital for acute care, COUNTY and SWDC had failed to train the SWDC nursing staff adequately so as to recognize the urgency with which medically unstable inmates must be transported to the hospital in light of the jail's limited medical facilities and failed to trained staff in continuity of care and in the safe release of inmates from custody.

63.     Defendant COUNTY and SWDC had a policy of relying on medical professionals without training them on how to implement proper procedures for documenting, monitoring and assessing inmates for medical instability, and transporting medically unstable inmates to the hospital amounting to deliberate indifference.

64.     As a result of the COUNTY and SWDC failure to adequately train and implement policies, Mr. ORSO was caused undeserved pain and agony all culminating in his death on June 23, 2023.

## FOURTH CLAIM FOR RELIEF
### MONELL- UNCONSTITUTIONAL CUSTOM, POLICY OR PRACTICE
### (42 U.S.C. §1983) (AGAINST COUNTY)

65.    Plaintiffs hereby repeat and re-state and incorporate each and every allegation in paragraphs 1 through 64 of this Complaint with the same force and effect as if fully set forth herein.

66.    On and for some time prior to September 21, 2024 (and continuing to the present date) Defendants COUNTY and SWDC deprived Plaintiffs and Mr. ORSO of the rights and liberties secured to them by the Fourth, and Fourteenth Amendments to the United States Constitution, in that said defendants and their supervising and managerial employees, agents, and representatives, acting with reckless and deliberate indifference to the rights and liberties of Plaintiffs and Mr. ORSO and of persons in his class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized county custom, policy, and practice of: acting deliberately indifferent to the serious medical needs of inmates when defendants failed to take any meaningful corrective measures despite being previously placed on notice of their egregious practices resulting in prior deaths. The following is a list of *Monell* violations:

(a) Failing to implement policies and procedures on basic symptom recognitions and assessment of inmates who are in medical distress;

(b) Routinely failing to train medical and detention staff on the ensuring medically unstable inmates are safely transported to the hospital.

(c) Inadequately supervising, training, controlling, assigning, and disciplining employees including COUNTY Jail staff;

(d) Routinely neglecting and ignoring gravely ill inmates and enabling the custom and practice of medically distressed inmates to rely upon themselves to seek emergency medical treatment;

(e) Engaging in the custom and practice of discriminating against chronically ill inmates and withholding emergency medical treatment until an inmate is at a near-death condition;

(f) Routinely preventing inmates access to medical doctors, due to a custom and practice of a failed booking policy;

(g) Routinely denying to treat more severe co-morbid medical conditions due to a "*one condition at a time*" medical policy.

By reason of the aforementioned policies and practices of the DOE Defendants and COUNTY, Plaintiffs have suffered the loss of their father and husband, Mr. ORSO.

67.     Defendant COUNTY, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above.  Despite having knowledge as stated above, these defendants condoned, tolerated and through actions and inactions thereby ratified such policies.  Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Plaintiffs and other individuals similarly situated.

68.     By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendant COUNTY, SWDC acted with an intentional, reckless, and callous disregard for the well-being Mr. ORSO and his constitutional as well as human rights.

69.     Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by Defendant COUNTY,  SWDC were affirmatively linked to and were a significantly influential force behind the Mr. ORSO's death.

70.     As a direct and legal result of Defendants' acts, Plaintiffs have suffered damages, including, without limitation, past pain and suffering, loss of life, loss of opportunity for life, and compensatory damages. Such damages including attorneys' fees, costs of suit, and other pecuniary losses not yet ascertained. Additionally, Defendants are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

71.    As a direct and proximate result of the defendants' aforementioned conduct, the Plaintiffs, successors-in-interest for Mr. ORSO, set forth that the defendants are liable to them for damages including but not limited to funeral and burial related expenses, and damages to provide for the Plaintiffs' deprivation and injury as a result of the loss of the Mr. ORSO's support, company, comfort, counsel, familial relations, aid, association, care and services.

**FIFTH CLAIM FOR RELIEF**

**SUPERVISORY LIABILITY**

**(42 U.S.C. §1983) (AGAINST DOE 9)**

72.    Plaintiffs hereby repeat and re-state and incorporate each and every allegation in paragraphs 1 through 71 of this Complaint with the same force and effect as if fully set forth herein.

73.    At all relevant times, Defendants DOES 1-8 and DOES 9-10 were employed by COUNTY and were acting under color of state law in their capacity as supervisory and/or medical personnel at SWDC.

74.    DOES 1-8 were aware or reasonably should have been aware of Mr. ORSO's serious medical conditions, including his cardiac history, presence of a portable EKG monitor, and symptoms of alcohol withdrawal and chest pain.

75.    Despite this knowledge, DOES 9-10 failed to take steps to intervene, correct, or prevent the unconstitutional conduct of subordinate staff (DOES 1-8), who released Mr. ORSO in a medically unsafe condition without appropriate evaluation, monitoring, or emergency medical intervention.

76.    The acts and omissions of DOES 9-10 reflect their deliberate indifference to Mr. ORSO's constitutional rights and their failure to train, supervise and discipline staff under their authority, which directly contributed to Mr. ORSO's suffering and death.

77.     As a direct and proximate result of this supervisory misconduct, Mr. ORSO was denied adequate medical care, placed at extreme risk, and ultimately died as a result of preventable medical neglect.

78.     Plaintiff is therefore entitled to compensatory and punitive damages, attorneys' fees pursuant to 42 U.S.C. §1983, and all other relief deemed just and proper by the Court.

## SIXTH CLAIM FOR RELIEF

## 14TH AMENDMENT- INTERFERENCE WITH FAMILIAL RELATIONS
## (Against Defendants DOES 1-3, DOE 4, DOES 5-8, DOES 9-10)

79.     Plaintiffs hereby repeat and re-state and incorporate each and every allegation in paragraphs 1 through 78 of this Complaint with the same force and effect as if fully set forth herein.

80.     LAWERNCE D. ORSO had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive him of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in Plaintiff's familial relationship with his daughter LEXIE ORSO and wife MICHELLE ORSO.

81.     Plaintiff LEXIE ORSO had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in Plaintiff's familial relationship with her father, LAWERENCE D. ORSO.

82.     Plaintiff MICHELLE ORSO had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state

interference in Plaintiff's familial relationship with husband, LAWERENCE D. ORSO.

83.    The aforementioned actions of Defendants, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of Mr. ORSO and Plaintiffs, and with deliberate indifference and purpose to harm unrelated to any legitimate law enforcement objective.

84.    As a direct and proximate result of these actions, Mr. ORSO experienced pain and suffering and eventually died. Defendants thus violated the substantive due process rights of Plaintiffs to be free from unwarranted interference with their familial relationship with Mr. ORSO.

85.    As a direct and proximate cause of the acts of Defendants, Plaintiffs suffered emotional distress, mental anguish, and pain. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Mr. ORSO, and will continue to be so deprived for the remainder of their natural lives.

86.    As a result of their misconduct, Defendants are liable for Mr. ORSO's injuries, either because they were integral participants in the use of excessive force and failure to provide medical care, or because they failed to intervene to prevent these violations.

87.    Defendants' conduct was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. ORSO and Plaintiffs and therefore warrants the imposition of exemplary and punitive damages as to the individual Defendants.

88.    Plaintiffs bring this claim both individually and seek wrongful death and 14th amendment parental rights damages under this claim. Plaintiffs also seeks punitive damages and attorneys' fees under this claim.

## SEVENTH CLAIM FOR RELIEF

### NEGLIGENCE

### (Government Code Section § 820 et seq.)

### (Against DOES 1-4, 9 and COUNTY)

89.     Plaintiffs hereby repeat and re-state and incorporate each and every allegation in paragraphs 1 through 88 of this Complaint with the same force and effect as if fully set forth herein.

90.     Defendants COUNTY, SWDC, DOES 1-4, DOES 9-10, and each of them, have a duty to operate and manage the Imperial County Jail in a manner so as to prevent the acts and/or omissions alleged herein. Said defendants owed ORSO, as an inmate in defendants' custody, care and control, a duty of due care to protect his health and physical safety.

91.     Defendants COUNTY, SWDC, DOES 1-4, DOES 9-10were negligent and their conduct fell below a reasonable standard of care when they failed to discharge their duties as jail deputies to Mr. ORSO. It was foreseeable that as a result of Defendants' acts and omissions, as described above, Mr. ORSO's symptoms would worsen, resulting in his physical injury, suffering, and death. Defendants' breach proximately caused injuries and damages to Mr. ORSO as Plaintiffs claim herein.

92.     As a direct and proximate result of the defendants' aforementioned conduct, the Plaintiffs set forth that the defendants are liable to her for damages including but not limited to funeral and burial related expenses, and damages to provide for the Plaintiff's deprivation and injury as a result of the loss of Mr. ORSO's support, comfort, counsel, familial relations, aid, association, care and services.

//

//

//

# EIGTH CLAIM FOR RELIEF

## BANE ACT (C.C. 52.1 et seq. (State))

## (Against COUNTY, DOES 1-10)

93.    Plaintiffs hereby repeat and re-state and incorporate each and every allegation in paragraphs 1 through 92 of this Complaint with the same force and effect as if fully set forth herein.

94.    California Civil Code, Section 52.1 (*the Bane Act),* prohibits any person from using violent acts or threatening to commit violent acts in retaliation against another person for exercising that person's constitutional rights. However, under *Reese v. County of Sacramento, 888 F.3d 1030, 1042-4043 (9th Cir. 2018),* the Bane Act does not require the "threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation Alleged.

95.    Specific intent does not require a showing that a defendant knew he was acting unlawfully; reckless disregard of the right at issue is all that is necessary [1]*Luttrell v. Hart,* 2020 WL 5642613.

96.    On information and belief, Defendants while working for the COUNTY and/or SWDC and acting within the course and scope of their duties, denied Mr. ORSO necessary healthcare that could have prevented his death. All defendants were deliberately indifferent towards Mr. ORSO when they failed to take Mr. ORSO's heart condition and chest pains seriously, chose not call an ambulance, and/or otherwise ensure his safe transport to a hospital for treatment.

97.    When Defendants committed the above acts, they acted with the specific intent required under the Bane Act. Defendants intentionally and

---

[1] Per *Luttrell*, if a Plaintiff adequately pleads a claim for deliberate indifference which requires a pleading of reckless disregard, then he was sufficiently alleged the "intent" element required for the Bane Act. Under *Reese*, "a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of that right. Some courts such as *Polance v. California 2022 WL 1539784, at*4 (N.D. Cal. May 16, 2022)* have deemed the application of the Bane Act appropriate when there is a showing of deliberate indifference toward correctional inmates ("observing that "defendant who acts with deliberate indifference toward an inmate may satisfy the 'threat, intimidation, or coercion' element, as the custody context makes that violation especially coercive" and collecting

spitefully committed the above acts to deny Mr. ORSO the necessary healthcare that could have prevented his death.

98.    Mr. ESSEX reasonably believed and understood that he was being denied the right to adequate healthcare.

99.    Defendants successfully interfered with the above civil rights of Mr. ORSO and Plaintiffs.

100.    The conduct of Defendants was a substantial factor in causing Plaintiffs' harms, losses, injuries, and damages.

101.    Defendants COUNTY and SWDC are vicariously liable under California law and the doctrine of *respondeat superior*.

102.    The conduct of Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for Mr. ORSO and Plaintiffs' rights, justifying an award of exemplary and punitive damages as to the defendants.

103.    Plaintiffs bring this claim as a successor-in-interest to Mr. ORSO, and seek survival damages under this claim. Plaintiffs also seek punitive damages and attorneys' fees under this claim.

## NINTH CLAIM FOR RELIEF
### FAILURE TO SUMMON MEDIAL CARE
### (Government Code §845.6 and 844.6)
### (Against all Defendants DOES 1-4, 9).

104.    Plaintiffs hereby repeat and re-state and incorporate each and every allegation in paragraphs 1 through 103 of this Complaint with the same force and effect as if fully set forth herein.

105.    Plaintiffs repeat, re-state, and incorporate each and every allegation in paragraphs 1 through 111 of this Complaint with the same force and effect as if fully set forth herein.

106.    California Government Code § 845.6 creates an affirmative duty for jail staff "to furnish or obtain medical care for a prisoner in his custody."  Mr.

ORSO desperately required prompt medical attention from Defendants. Defendants had actual knowledge of Mr. ORSO's need for immediate medical care and deliberately chose to not ensure Mr. ORSO received proper medical care. Defendants failed to discharge the duty imposed upon them by California Government Code § 845.6. As a direct and proximate result of Defendants' acts and/or omissions, hereinabove described, Mr. ORSO suffered severe the symptoms of his medical conditions and ultimately died.

107.    Defendants are liable for their employees' breach of their duty to summon required immediate medical care while acting in the course and scope of their employment under the doctrine of *respondeat superior*.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request entry of judgment in their favor and against all Defendants COUNTY, DOES 1 through 3, DOE 4, DOES 5 through 8, and DOES 9- 10, inclusive, as follows:

1.    For compensatory wrongful death damages according to proof.

2.    For punitive damages against the individual defendants in an amount to be proven at trial.

3.    For federal civil rights damages under *Chaudry v. County of San Diego* including but not limited to *pre*-death pain and suffering, loss of life and loss of opportunity for life.

4.    For reasonable costs of this suit and attorneys' fees per 42 U.S.C. §1988; and

5.    For Damages under C.C. 52.1 under the Ralph Bane act and reasonable attorney's fees, and loadstar multiplier.

6.    For wrongful death damages under the 14th Amendment Due process clause.

7.    For such further other relief as the Court may deem just, proper, and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial.


Date: July 2, 2025,            THE SEHAT LAW FIRM, PLC


By: */s/ Cameron Sehat*
Cameron Sehat
Alexandra Menninger
Jeffrey Mikel
Attorney for Plaintiffs